This is a IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| NATHAN M. BLAYLOCK,<br><br>Plaintiff,<br><br>vs.<br><br>AMTRAK RAILROAD,<br><br>Defendant. | Cause No. CV-07-174-BLG-RFC-CSO<br><br>FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter arises from an injury Plaintiff Nathan Blaylock claims he suffered while riding an Amtrak train. Defendant Amtrak Railroad has filed a Motion for Summary Judgment. (Court Doc. 18). Plaintiff Nathan Blaylock's response was due August 5, 2009, but was not then filed.

On August 11, 2009, Amtrak filed a status report indicating counsel sent Blaylock a letter explaining the summary judgment procedure and providing him a copy of Local Rule 56.1. (Court Doc. 22). Since the filing of Amtrak's Motion, Blaylock filed a demand for jury trial (Court Doc. 21), a Notice of Change of Address (Court Doc. 25),

and what the Court construes as Blaylock's response to the Motion for Summary Judgment. (Court Doc. 26).[1]

## I. SUMMARY JUDGMENT STANDARDS

Parties are entitled to summary judgment if they can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). That is, where the documentary evidence permits only one conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251 (1986).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and

---

[1] Amtrak filed a status report with the Court on August 11, 2009 and argued the motion should be submitted at that time. (Court Doc. 22). There is no doubt that Blaylock failed to timely respond to Amtrak's motion. But there is a strong federal policy favoring decisions on the merits. See Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986)(regarding default judgments); DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 185-6 (9th Cir. 1987)(regarding granting leave to amend under Rule 15); Pagtalunan v. Galaza, 291 F.3d 639 (9th Cir. 2002)(Fed.R.Civ.P. 41(b) dismissals); Eldridge v. Block, 832 F.2d 1132, 1137 (9th Cir. 1987)(policy favoring resolution on the merits "is particularly important in civil rights cases."). In light of this policy and the lack of prejudice to Amtrak, the Court will consider Blaylock's response.

admissions on file, together with the affidavits, if any, it believes demonstrate the absence of any genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the moving party has met its initial burden with a properly supported motion, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. The non-moving party may do this by use of affidavits (including his own), depositions, answers to interrogatories, and admissions. Id. Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. Id.

At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-50.

> The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there

must be evidence on which the jury could reasonably find for the [non-moving party].  The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

Anderson, 477 U.S. at 252.

In the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and to afford the pro se litigant the benefit of any doubt.  Erickson v. Pardus, 551 U.S. 89, 127 S.Ct 2197, 2200 (2007) (per curiam); Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir. 1988).

II.   STATEMENT OF FACTS[2]

Blaylock boarded an Amtrak train in Hollywood, Florida on February13, 2007, and rode to Washington, D.C.  There he boarded another Amtrak train and rode to Chicago, Illinois. (Court Doc. 20: Amtrak Facts, ¶ 2 citing Depo. Blaylock 30, 38).

While traveling from Washington to Chicago, Blaylock sat on a

---

[2]The Court has primarily utilized Amtrak's Statement of Undisputed Facts in formulating this statement of facts.  Blaylock did not file a Statement of Genuine Issues as is required by Local Rule 56.1(b).

toilet seat and felt an immediate burning and itching sensation on his legs and buttocks. He attempted to rinse himself off, which provided temporary relief, but later noticed he was getting welts on his backside. (Court Doc. 20: Amtrak Facts, ¶ 3 citing Depo. Blaylock 31). After arriving in Chicago, he stayed overnight in a hotel. (Court Doc. 20: Amtrak Facts, ¶ 3 citing Depo. Blaylock 35).

After the layover in Chicago, Blaylock rode another Amtrak train to Denver, Colorado. (Court Doc. 20: Amtrak Facts, ¶ 4 citing Depo. Blaylock 34-35). As he traveled to Denver, he experienced nausea and began feeling weak. When he arrived in Denver on February 17, 2007, he went to the ticket counter and asked to have an ambulance take him to the hospital. (Court Doc. 20: Amtrak Facts, ¶ 5 citing Depo. Blaylock 33). Blaylock was taken to Exempla St. Joseph Hospital where he was admitted and treated for an infectious disease, which he described as "a MRSA type infection." He was in the hospital for five days and released on February 22, 2007. (Court Doc. 20: Amtrak Facts, ¶ 6 citing Depo. Blaylock 38-40).

Mr. Blaylock's medical records indicate that he had folliculitis/

furunculosis/multiple abscesses caused by methicillin resistant Staphylococcus aureus on his buttocks. (Court Doc. 20: Amtrak Facts, ¶ 7 citing Court Doc. 20-3: Aff. Camilla Saberhagen, M.D., F.A.C.P. p. 2, ¶ 5).

Blaylock denied having a previously infection like this. (Court Doc. 20: Amtrak Facts, ¶ 2 citing Depo. Blaylock 41). But medical records from St. Vincent's Healthcare in Billings, Montana, indicate he was diagnosed with a Staphylococcus aureus infection in his left arm in August 2006, only six months before the events alleged in his Complaint. (Court Doc. 20: Amtrak Facts, ¶ 8 citing Court Doc. 20-3: Aff. Saberhagen ¶ 6; Court Doc. 20-3 exhibits: St. Vincent Healthcare records at SV-44, 46, 51, 52, 58 and 67).

III. ANALYSIS

Construed liberally, Blaylock's presents a negligence case. To prove negligence, a plaintiff must establish: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached the duty; (3) the breach was the actual and proximate cause of the plaintiff's injury; and (4) resulting damages. Bonilla v. University of Montana, 2005 MT 183, ¶

14, 328 Mont. 41, ¶ 14, 116 P.3d 823, ¶ 14 (Mont. 2005).

Amtrak contends there is no genuine issue of material fact regarding causation based upon the expert medical testimony of Camilla Saberhagen, M.D., F.A.C.P.  Having reviewed Dr. Saberhagen's credentials and training, the Court finds her qualified to provide an opinion in this matter.

Dr. Saberhagen presented the following information regarding the infection Mr. Blaylock contracted:  Staphylococcus aureus is a bacterium that frequently colonizes a person's skin and mucous membranes, often with no symptoms, and only becoming symptomatic when it superinfects a traumatized or irritated area of the body.  (Court Doc. 20-3:  Aff. Saberhagen ¶ 8).  In the community, Staphylococcus aureus is most commonly transmitted from person to person through skin contact, not from contact with environmental surfaces. (Court Doc. 20-3:  Aff. Saberhagen ¶ 9).

Further, Dr. Saberhagen provided the following opinions, to a reasonably degree of medical certainty, regarding the cause of Mr. Blaylock's infection:  Mr. Blaylock did not contract folliculitis

superinfected with methicillin resistant Staphylococcus aureus on his buttocks from a toilet seat or any other environmental surface on an Amtrak train. (Court Doc. 20-3: Aff. Saberhagen ¶ 12(a)). Mr. Blaylock was more likely than not already in the early stages of his Staphylococcus aureus infection before he ever sat on the toilet seat on the Amtrak train. (Court Doc. 20-3: Aff. Saberhagen ¶ 12(b)). Mr. Blaylock more likely than not is part of the 60 percent of the population whose skin, from time to time, is colonized with the Staphylococcus aureus bacterium. (Court Doc. 20-3: Aff. Saberhagen ¶ 12(c)). Mr. Blaylock more than not likely developed folliculitis from prolonged sitting on his train trip in what is described in the medical records as "filthy clothes." (Court Doc. 20-3: Aff. Saberhagen ¶ 12(d); Court Doc. 20-3 p. 49: Exempla Medical Records).

 Mr. Blaylock's prolonged sitting more likely than not macerated the skin of his buttocks and allowed the Staphylococcus aureus bacterium already present on his skin to become an invasive infection. (Court Doc. 20-3: Aff. Saberhagen ¶ 12(e)). Thus, the methicillin resistant Staphylococcus aureus organism that superinfected Mr.

Blaylock's buttock folliculitis more likely than not came from his own skin, was an opportunistic pathogen in the warm, moist, irritated, unclean environment of Mr. Blaylock's buttock area during his long train trip, and did not come from the toilet seat or any other surface on the Amtrak train. (Court Doc. 20-3: Aff. Saberhagen ¶ 12(f)).

Amtrak, with this medical testimony, met their burden of demonstrating the absence of any genuine issue of material fact regarding the causation of Mr. Blaylock's infection. The burden thus shifted to Mr. Blaylock to demonstrate there is a genuine issue for trial.

Mr. Blaylock alleged in his Complaint that the infection was caused from Amtrak's unmaintained toilet seat and the failure to provide protective covers for the toilet seat. (Court Doc. 1: Complaint, p. 4). As set forth above, Blaylock "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 248. Although Blaylock has alleged that the infection was caused by sitting on the toilet seat, he has presented no competent evidence to support that allegation. Blaylock's own testimony that he

believes the infection came from the train toilet seat is not sufficient given he is not a medical expert and cannot give a medical opinion.

In his response, Mr. Blaylock lists all the evidence he has to prove his injuries. But it is undisputed that Mr. Blaylock had an infection which required medical treatment. What is disputed is how he got that infection. Amtrak presented expert medical testimony that he could not have gotten the infection from the toilet seat. Mr. Blaylock did not present competent evidence to dispute that opinion.

Mr. Blaylock has not come forward with any evidence that creates a triable issue of fact for trial as to whether the infection was caused by the Amtrak toilet seat.

## IV. CONCLUSION

Blaylock's claims against Amtrak are insufficient to survive summary judgment. Blaylock has, as a matter of law, failed to produce sufficient evidence to overcome the undisputed medical testimony presented by Amtrak. As such, the Court will certify that any appeal of this matter would not be taken in good faith.

Based on the foregoing, the Court issues the following:

RECOMMENDATION

1.  Defendant Amtrak's Motion for Summary Judgment (Court Doc. 18) should be GRANTED.

2.  The Clerk of Court should be directed to enter judgment in favor of Defendant Amtrak and close this case.

3  The Clerk of Court should be directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith.  Blaylock failed to produce evidence to create a triable issue of fact, and as such no reasonable person could suppose that an appeal would have merit.

NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), Blaylock may serve and file written objections to this Findings and Recommendation within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing.  Any such filing should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

A district judge will make a de novo determination of those

portions of the Findings and Recommendation to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendation. Failure to timely file written objections may bar a de novo determination by the district judge and may waive the right to appeal the District Court's order. [Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991)](#).

This is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to [Fed.R.Civ.P. 4(a)(1)](#), should not be filed until entry of the District Court's final judgment.

DATED this 3rd day of November, 2009.

                                        /s/ *Carolyn S. Ostby*
                                        Carolyn S. Ostby
                                        United States Magistrate Judge